UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH ROTE,

                 Petitioner,

v.                          Case No. 3:09-cv-1218-J-20MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                 Respondents.

_____

## ORDER

### I. Status

Petitioner Rote initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on November 6, 2009, pursuant to the mailbox rule. He challenges a 2005 state court (Columbia County, Florida) judgment of conviction for two counts of DUI manslaughter and one count of DUI causing serious bodily injury on four grounds. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response (Doc. #26), filed December 1, 2011; Exhibits (Resp. Ex.) (Docs. #27, #28). On May 17, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc.

#11), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Over five months having passed since the filing of Respondents' Response, Petitioner has not filed a Reply. This case is ripe for review.

## II. Procedural History

The State of Florida charged Rote with two counts of DUI manslaughter and two counts of DUI causing serious bodily injury. Resp. Ex. 1 at 125-27, Second Amended Information. After jury selection, Rote proceeded to a jury trial. Resp. Exs. 4 and 5, Transcripts of the Jury Trial (Tr.). At the conclusion of the trial, a jury found Rote guilty of two counts of DUI manslaughter, one count of DUI causing serious bodily injury, and one count of DUI, the lesser included offense. Resp. Ex. 2 at 264-65, Verdict; Tr. at 328. On July 8, 2005, the trial court sentenced Rote to two consecutive fifteen-year terms of incarceration for each DUI manslaughter (counts one and two) and a consecutive five-year term of incarceration for DUI with serious bodily injury (count three); however, the State agreed that it would not seek to have Rote sentenced on count four. Resp. Exs. 2 at 271-85, Judgment; 6, Transcript of the Sentencing Proceeding, at 337, 357-58.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court abused its discretion by denying Petitioner's motion for a continuance when Donald Freed, a witness essential to the defense, could not be timely produced for

2

the trial. Resp. Ex. 7. The State filed an Answer Brief. Resp. Ex. 8. On July 14, 2006, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. Rote v. State, 933 So.2d 527 (Fla. 1st DCA 2006); Resp. Ex. 9. The mandate issued on August 1, 2006.[1] Petitioner did not seek review in the United States Supreme Court.

On October 11, 2006, Petitioner filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. 10 at 1-6. In his request for post conviction relief (Rule 3.850 motion), Petitioner alleged that his counsel (Robert D. Baker III) was ineffective because he failed to: investigate and interview Johnny Walker, a potential witness (ground one), and have a handwriting expert review the letter (purportedly written by Petitioner and mailed to the police wherein he admitted having been the driver) and object to its admission at trial (ground two). On December 13, 2006, the post-conviction court denied the Rule 3.850 motion as to ground two and ordered an evidentiary hearing on ground one. Id. at 58-60. On February 22, 2007, the court denied Rote's motion for appointment of counsel. Id. at 121-24, 126-27. The evidentiary hearing was held on February 22, 2007. Resp. Ex. 11, Transcript of the Evidentiary

---

[1] Online docket, Kenneth Rote v. State of Florida, Case No. 1D05-3511, website for the First District Court of Appeal (http://www.1dca.org).

Hearing (EH Tr.). On March 15, 2007, the court denied Rote's Rule 3.850 motion as to ground one. Resp. Ex. 10 at 128-30.

Petitioner appealed the denial of his Rule 3.850 motion and filed a brief, see Resp. Ex. 12, and the State filed an Answer Brief, see Resp. Ex. 13. On June 1, 2009, the appellate court affirmed the trial court's decision per curiam. Rote v. State, 10 So.3d 636 (Fla. 1st DCA 2009); Resp. Ex. 14. The mandate issued on June 29, 2009. Resp. Ex. 15.

On June 22, 2007, while the appellate court was considering the appeal of the Rule 3.850 motion, Petitioner filed a pro se petition for writ of habeas corpus, claiming that appellate counsel (Hunter P. Pfeiffer) was ineffective because he failed to raise the following issues on direct appeal: trial counsel failed to investigate Rote's actual innocence claim, including Rote's contention that he was not driving the vehicle that caused the accident; trial counsel failed to investigate and impeach Wanda Greer relating to her suspended driver's license; and trial counsel failed to challenge the confessional letter for authenticity by an expert. Resp. Ex. 16. Petitioner concluded that appellate counsel "was responsible for combing the record to discover defects that caused the Petitioner to be denied his Constitutional right to a fair trial." Id. at 11. On August 1, 2007, the appellate court per curiam denied the petition on the merits. Rote v. State, 963 So.2d 273 (Fla. 1st DCA 2007); Resp. Ex. 17.

4

## III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 15-16.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120

5

S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[2]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v.

---

[2] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

7

<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[3] A reasonable probability is a probability sufficient to undermine confidence

---

[3] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Where ineffective assistance of counsel results in a rejection of the plea offer and the defendant is convicted at the ensuing trial, the defendant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (<u>i.e.</u>, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1385 (2012).

8

> in the outcome."[4]  Id., at 694, 104 S.Ct.
> 2052.  It is not enough "to show that the
> errors had some conceivable effect on the
> outcome of the proceeding."  Id., at 693, 104
> S.Ct. 2052.  Counsel's errors must be "so
> serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable."
> Id., at 687, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

The two-part Strickland test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct.

---

[4] See Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted) ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.").

9

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[5], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that he was denied due process of law and a fair trial when the trial court denied his motion for continuance of the trial to secure the attendance of

---

[5] Knowles v. Mirzayance, 556 U.S. 111 (2009).

Donald Eugene Freed, Jr. Petitioner argued this issue on direct appeal, see Resp. Ex. 7, the State filed an Answer Brief, see Resp. 8, and the appellate court affirmed Petitioner's conviction and sentence per curiam without a written opinion concerning this issue, see Rote, 933 So.2d 527; Resp. Ex. 9. To the extent that Petitioner is raising, in ground one, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

The State, in its appellate brief, addressed the claim on the merits. Resp. Ex. 8. Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[6] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[6] In Harrington, 131 S.Ct. at 785, the Court "h[eld] and reconfirm[ed] that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

11

proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.[7]

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim, nevertheless, is without merit. On June 7, 2005, the eve of the trial, Petitioner moved for a continuance of the trial to enable him to secure the attendance of Donald Eugene Freed, Jr. Resp. Ex. 2 at 212-14. In the motion, Petitioner claimed that the testimony of Freed "is crucial to the defense in this case, as he was the owner of the vehicle alleged to have been driven by [Petitioner Rote], and he will also be able to testify to who he last saw driving the vehicle." Id. at 212. That same day, the trial court held a hearing on the motion. See Resp. Ex. 3.

At the hearing on the motion, defense counsel pointed out that the defense had deposed Freed in 2004.[8] Id. at 301. He also told the court that he had made telephonic contact with Freed who had informed him that he was in Georgia and that he would not be at the trial. Id. at 302. When counsel informed Freed that the next trial term would be in August, Freed replied "something to the

_____

[7] Petitioner has neither shown that the state court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, nor that the adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

[8] The defense had deposed Freed on April 5, 2004. Resp. Ex. 2 at 218.

12

effect of, well, if you can find me and can serve me with a subpoena, then I'll be there in August." Id. Counsel told the court that Freed "will put [James] Michael in possession of the vehicle, and not Mr. Rote." Id. at 303. Moreover, counsel argued that, without Freed, the evidence in the case would begin and end at the crash scene, and that there would be no evidence as to who might have been in possession of the truck earlier in the day. Id. at 304. Pointing out that the State had attempted unsuccessfully to subpoena Freed, id. at 307, counsel stated: "I submit to you, Judge, what we have here is a crucial witness who is avoiding process because he doesn't want to be involved in this case." Id. at 308.

The prosecutor underscored that the State had been unsuccessful in subpoenaing Freed. Id. at 310. The prosecutor pointed out that Freed did not see James Michael leave in the truck and he did not give Michael a key to the truck, but that Michael had his own key. Id. at 312. Additionally, the prosecutor argued that the jury had already been chosen; in fact, the trial was scheduled to begin the next day. Id. at 312-13. Finally, the prosecutor asserted that there was no reason to believe that that the defense would be any more successful than the State in securing Freed's attendance if the court continued the trial to August. Id. at 310, 313.

In rebuttal and upon inquiry by the court, defense counsel told the court that he had no reason to believe that Freed would testify to anything more than what was contained in his deposition. Id. at 315. He also affirmed to the trial judge that his phone conversation with Freed was unfruitful and that Freed was uncooperative. Id. Counsel told the court that he did not think that Freed would come to court voluntarily. Id. at 316.

When the trial judge summarized Freed's deposition testimony, id. at 319, defense counsel responded: "my main point is that, you know, Freed maybe knows something about this case." Id. at 320. Defense counsel expressed that did not know until the date of the motion hearing that the State had not been successful in subpoenaing Freed. Id. at 320-21.

In denying the motion for continuance, the trial court found that Freed was "not an essential witness in the sense that he's not that much use" based on his 2004 deposition testimony. Id. at 331. The court also noted that Freed was currently out-of-state and had expressed an intent to avoid service of process. Id.

As previously noted, the defense had deposed Freed on April 5, 2004. In that deposition, Freed had testified that, on the day of the accident (September 19, 2003), he and his crew, which included Rote, were working on a job in Lake City, Florida, until mid-afternoon. Resp. Ex. 2 at 218-19. James Michael, who had worked with Freed for ten years, asked to borrow Freed's truck to pick up

his children in Jacksonville. Id. at 219. Freed testified: "And that's the last I saw of my truck that afternoon." Id. Freed left the job site in his minivan with his wife to go to Jacksonville. Id. at 219-21.

The following colloquy ensued.

> Q. And so as far as you know, you left from the job site. And had [Mr. Michael] already left to go to Jacksonville?
>
> A. He was leaving shortly after I left.
>
> Q. So you left to go to Jacksonville from the job site, he was still there and had told you that he was planning to go to Jacksonville.
>
> A. Right.

Id. at 222.

The following evidence was adduced at the June 8-9, 2005 trial. Wanda Greer testified that, on September 19, 2003, the day of the traffic incident, she was driving her mother's maroon van with her father as the passenger. Tr. at 43. They were going to the Subway in High Springs to buy dinner for the family. Id. at 44. As she was traveling towards Oleno State Park, she saw a truck coming up behind her "pretty fast." Id. at 45. Identifying exhibit five as the truck she saw coming up behind her at a high rate of speed, she described it as "a cream dually Ford pickup truck." Id. at 45, 46. She testified: "I kept telling dad, I said, it seems like he is just getting faster and faster and not slowing down.

15

And that's when my dad finally decided to turn around[,] when I said that[,] to look back." _Id_. at 47. Greer was not able to describe any of the latter events, stating: "The next thing I remember is waking up -- kind of waking up in the helicopter and then waking up in the trauma room. I don't remember nothing else." _Id_. at 47.

Todd Wagner testified that he and his wife (Kim Wagner) were traveling north on their way home after having dinner in High Springs when "all of a sudden the road in front of us filled with smoke." _Id_. at 68-69. Out of the corner of his eye, Wagner caught "the dually [truck] in a spin," and his wife exclaimed that a van had just gone into a ditch. _Id_. at 69. "After getting through the debris," Wagner stopped by the side of the road and went to the first vehicle, which was the green Tahoe (Hines' vehicle). _Id_. He found the passenger (Mr. Hines) dead. _Id_. at 71. Wagner hollered inside the vehicle to determine if there was anyone else inside, but got no response. _Id_. Next, Wagner went to the maroon van in the ditch and told the female passenger (Wanda Greer) that help was on the way. _Id_. at 76.

Next, Wagner went to the tan truck, described as a dual rear wheel Ford and "the biggest one of the three [vehicles]." _Id_. at 78-79. When he got to the truck, he saw a man lying on the inside with his head on the passenger side. _Id_. at 79. He asked the man

16

if there was anything that he could do for the man, and the man told him to get away from him. _Id_. at 79. Wagner could smell alcohol when he came up to the truck. _Id_. Wagner identified the Petitioner as the man in the Ford truck. _Id_. at 80. Wagner testified that perhaps two minutes passed from the time that he saw the smoke in front of him until he was standing at the Ford truck talking to Petitioner. _Id_. at 85. He did not observe anyone around or leave the truck other than Petitioner. _Id_. at 86.

Jo-Linda Zinsli testified that she was driving north towards Lake City when she and a friend came upon the traffic accident. _Id_. at 88. She had observed the green Tahoe pass her going towards Lake City. _Id_. at 89. Zinsli came upon the wreck and stopped just in time not to hit the Ford truck. _Id_. She and her friend exited their vehicle to observe the wreckage. _Id_. at 90. She only had contact with the man in the Ford truck, which she identified as "the tan dually." _Id_. at 92. She went to check and saw him "laying across the seat." _Id_. at 93. When she smelled the alcohol, she asked him if he had been drinking, and he affirmed that he was drunk; he kept telling her that he needed to go to the bathroom. _Id_. Zinsli identified the Petitioner as the man in the truck. _Id_. at 94.

Vickie Hein, a paramedic, testified that when she arrived at the Ford truck, Rote was sitting upright in the vehicle sideways in

the driver's seat with his feet in the passenger seat, and both doors were jammed shut, the windows were intact, and they could talk to Rote through the window. Id. at 103. Hein recalled that the windows of the truck were in an upward position. Id. at 104, 106. She did not observe any indication that there may have been another occupant of the truck at any time. Id. at 105. She stated there was no way that a person would have gotten out of the truck through the doors. Id. at 106. Petitioner claimed that someone else was driving. Id. When Hein asked Petitioner who was driving, Petitioner said he had no idea. Id. There was "a very strong odor" of alcohol when they pried the door open. Id. at 107. Petitioner told Hein that he had been drinking since 4:00 that afternoon and had consumed a lot of beer. Id. On cross-examination, Hein testified that she documented in her report that the windows were up and intact. Id. at 118, 119.

Richard Norris, a traffic homicide investigator with the Florida Highway Patrol, identified Rote as the driver of the Ford truck, explaining:

> He was the only one within the vehicle.
> EMS attended to him from the driver's side of
> the vehicle. According to witnesses he was –
> one observed him with his feet under the
> steering wheel laying over towards the
> passenger seat. And there was no evidence
> otherwise that anyone else could have been in
> the vehicle.

I later received a letter from -- that was signed by Mr. Rote at the Highway Patrol Station here in Lake City, which he stated that he, himself, was driving . . . .

Id. at 184. The letter was published to the jury:

I went to Ft. White to get a pack of cigs. I took 18 to 441 to go see a friend of mine. I went down 441 almost to 441 Barney. I see a fog in front of me. Next I knew there was a car with no taillights. I went for the brake but it was too late. I must have hit my head because I don't remember anything after that but waking up at the hospital with a broke neck. I was wearing a seatbelt. Name Kenneth S. Rote, signature Kenneth S. Rote.

Id. at 187-88. In the truck with Rote, Norris found twelve cans of beer (five opened and seven unopened), all were still cool to the touch. Id. at 190. These were found on the right front floorboard in a cooler. Id.

Norris concluded that the Ford truck driven by Rote struck the rear end of the van driven by Wanda Greer. Id. at 203. The two vehicles proceeded together for a certain distance, then a separation started to occur. Id. at 208. The rear of the truck began to rotate into the northbound lane. Id. at 211. Mr. Hines, who was northbound, traveled partially into the southbound lane to avoid hitting the minivan driven by Wanda Greer. Id. at 212. Mr. Hines was then struck head on by the Ford truck. Id. Norris estimated that the truck was traveling at 80 to 83 miles per hour at the time it hit Greer's minivan. Id. at 223. On cross-examination, Norris testified that, when he observed the windows of

19

the Ford truck, both of the windows were down. Id. at 227. On redirect, Norris testified that Rote had told other people that he was the only person there when asked if there was anyone else there at the scene. Id. at 244-45. Ilene Alford testified that she had performed the blood alcohol analysis. Id. at 252. The results were 0.218 and 0.216 grams of ethyl alcohol per milliliters of blood. Id. at 255.

Given the record, the trial court did not abuse its discretion in denying the defense's motion to continue the trial. As determined by the trial court, Donald Eugene Freed, Jr., a potential defense witness, would not have provided substantially favorable testimony in that he would have testified that he gave James Michael, his long-time employee, permission to use his truck earlier in the day on September 19, 2003 (the date of the traffic incident), but did not actually see Michael in possession of the truck.[9] Moreover, there was compelling evidence at the trial that Rote was the driver of the truck at the time of the traffic incident, which had occurred at approximately 8:00 p.m. that night. Petitioner's ground one does not warrant federal habeas relief.

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective because he failed to call Johnny Walker as a witness at the trial.

---

[9] See Exhibit 2 at 218-32, Freed's April 5, 2004 Deposition.

As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. After conducting an evidentiary hearing on the issue (at which Rote and defense counsel testified) and identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> At issue is Defendant's claim that Mr. Robert Baker (hereinafter "Trial Counsel") provided ineffective assistance of counsel by failing to call Mr. Johnny Walker as a defense witness. Defendant specifically asserts that Mr. Walker would have testified that when he came upon the scene of the accident he observed the Defendant wedged between the passenger seat and passenger door of his vehicle. Defendant asserts that had this evidence been presented at trial it would have provided reasonable doubt in the mind of the jurors regarding the State's allegation that Defendant was the driver of the vehicle that caused the accident in question.
>
> Prior to trial, Mr. Walker was d[e]posed by Trial Counsel in which he gave a detailed description of the night in question. The relevant portion of that deposition is as follows:
>
>> Q (from Trial Counsel): Did you see anything inside his truck that sent up a red flag for you?
>>
>> A (Mr. Walker): Not really. It just kind of surprised me that he was on the passenger side jammed in between the seat and the door, <u>when he was driving</u> you know, that's the only thing that kind of surprised me. I didn't really pay attention to whether there was beer or liquor or anything. But, you know, it was pretty obvious, either something had

been spilled in that vehicle, or he had been drinking.

Q (from Trial Counsel): When you said that his position in the vehicle surprised you give[n] that he had been driving, what made you think he had been driving?

A (Mr. Walker): There was nobody else in the vehicle.

Q (from Trial Counsel): So that was essentially the only reason you thought he was the driver was because there wasn't anybody else in the vehicle that could have been driving?

A (Mr. Walker): Yeah. And I didn't see any, you know, like windows busted out, you know, where somebody would have been thrown, so that's just the first thing that hit me, you know, there wasn't nobody else there.

Q (from Trial Counsel): The window on the driver side was down?

A (Mr. Walker): Both of the windows were down.

At the evidentiary hearing Trial Counsel stated he made a strategic decision not to call Mr. Walker based on the information he provided in his deposition along with several other factors. First, Trial Counsel stated that while Mr. Walker stated the Defendant was pinned on the passenger side of the vehicle, Mr. Walker's recollection was contradicted by the testimony of several other witnesses as well as the physical evidence. Thus, any helpful testimony provided by Mr. Walker would be negated not only by the remainder of Mr. Walker's testimony but also by the testimony of other individuals. Secondly, if Trial Counsel called Mr. Walker it would negate the

22

> benefit of Fla. R. Crim. P. 3.250 which allows
> a defendant the last opportunity to be heard,
> if the defendant offers no testimony on his
> behalf other than his own. As pointed out by
> Trial Counsel, if a witness were to be called
> in this situation it should not be one such as
> Mr. Walker who would ultimately leave a bad
> impression of the defendant with the jurors.
>
> Based on the testimony provided by Trial
> Counsel it is clear that he made a sound
> strategic decision not to call to Mr. Walker
> and therefore he did not provide ineffective
> assistance of counsel. Additionally, on
> credibility issues in conflict, this Court
> finds the testimony of Mr. Baker is more
> credible than the testimony of the defendant
> Mr. Rote.

Resp. Ex. 10 at 129-30. Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on the basis of this claim.[10]

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The record supports the trial court's findings. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland,

---

[10] Petitioner has neither shown that the state courts' adjudications of the claim were contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, nor that the adjudications were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

24

466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), cert. denied, 552 U.S. 990 (2007). Petitioner has failed to carry this burden.

Given the record, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Johnny Walker as a witness for the defense. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. See EH Tr.; Resp. Ex. 10 at 82-85, Walker's Deposition.

### C. Ground Three

As ground three, Petitioner claims that counsel was ineffective because he failed to acquire a handwriting expert who

could have challenged the authentication of the "confession" letter, which was purportedly signed by Petitioner. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. The trial court denied the motion as to this claim. Resp. Ex. 10 at 59. To the extent that the claim is sufficiently exhausted and not procedurally barred, the ineffectiveness claim is nevertheless without merit since Petitioner has shown neither deficient performance nor resulting prejudice. See Response at 17-19.

### D. Ground Four

As ground four, Petitioner claims that appellate counsel was ineffective because he failed to raise, on direct appeal, that trial counsel was ineffective for failing to investigate two witnesses: Wanda Greer (relating to her suspended driver's license) and James Michael. Petitioner raised these claims in his state petition for writ of habeas corpus, see Resp. Ex. 16, and the appellate court per curiam denied the petition on the merits. Rote, 963 So.2d 273; Resp. Ex. 17. Thus, as there is a qualifying state court decision,[11] the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the

---

[11] In Harrington, 131 S.Ct. at 785 (holding and reconfirming that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits).

record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.[12]

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. In order to establish prejudice, the court must review the merits of the omitted claim. See Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (citation omitted), cert. denied, 130 S.Ct. 1884 (2010). Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal." Id. at 1265 (citation and quotations omitted).

Petitioner has failed to establish that appellate counsel's failure to raise these claims relating to the ineffectiveness of trial counsel was deficient performance. Even assuming arguendo

---

[12] Petitioner has neither shown that the state court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, nor that the adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

deficient performance by appellate counsel, Petitioner has not shown resulting prejudice. Given the record, he has not shown a reasonable probability exists that the ineffectiveness claims would have been meritorious on direct appeal, if counsel had raised them. Accordingly, Petitioner's ground four is without merit since he has neither shown deficient performance nor resulting prejudice.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. Knowles, 556 U.S. at 123. The remainder of Petitioner's claims are without merit. Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

29

3.  If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.  The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of May, 2012.

UNITED STATES DISTRICT JUDGE

sc 5/18
c:
Kenneth Rote
Ass't Attorney General (Duffy)